UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MINE KAVAFOGLU, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:18-CV-3512 |
| | § | |
| KIRSTJEN M. NIELSEN, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Before the Court are the competing claims of the plaintiffs', Ali and Mine Kavafoglu and their minor children, A-K, S-K, and N-K, as presented in their complaint, emergency motion and brief (Dkt. Nos. 1, 2 and 15) and the defendants' Kirstjen M. Nielsen, Michael R. Pompeo, L. Francis Cissna, Tony Bryson and Mark Siegl, in their official capacities as officers of the U.S. Department of State, the U.S. Department of Homeland Security, the U.S. Citizenship and Immigration Service, and the U.S. Citizenship and Immigration Service Houston Field Office, respectively. (Dkt. No. 17). The Court has examined the parties' submissions and the applicable law and determines that the plaintiffs' requested relief should be **DENIED**.

**I.[1]**

The plaintiffs, Ali and Mine Kavafoglu (collectively, the "plaintiffs"), are citizens of Turkey. They have three daughters, A-K-, born on July 21, 2000; S-K-, born on September 30, 2004; and, N-K-, born on June 1, 2015, all born in Turkey. In Turkey, prior to his initial entrance into the U.S., Mr. Kavafoglu served as a principal at Mersin Yildirimhan Anadolu High School, a Hizmet Movement[2] affiliated school. He was selected for the Diversity Immigrant

---

[1] In light of the stipulated facts, the Court adopts the statement of facts, in relevant parts, as presented by the plaintiffs in their brief. (Dkt. No. 15).
[2] The Hizmet Movement is also known as the Gulen Movement.

1 / 7

Visa Program for the 2010 fiscal year. From May of 2010 to May of 2012, Mr. Kavafoglu, Mrs. Kavafoglu, A-K- and S-K-, lived in the U. S. as lawful permanent residents ("LPRs").

In 2012, however, the family moved back to Turkey after Mr. Kavafoglu was offered a position as a recruiter for North American University. There, he opened an educational consulting company named Kuzey Amerika Yurtdisi Egitim Danismangligi through which he recruited students to attend North American University. After his return to Turkey, Mr. Kavafoglu voluntarily abandoned his LPR status. He, nevertheless, continued to travel to the U.S. as a B-1/B-2 visitor visa holder[3] (*See* Ex. B at 2.). His wife and daughters lost their LPR status in 2016 due to their prolonged failure to return to the U.S.

On April 23, 2016, the plaintiffs and their daughters, S-K- and N-K- entered the U. S. as B-1/B-2 visitor visa holders, with authorization to remain in the U.S. until October 22, 2016. Their oldest daughter, A-K-, however, entered the U.S. on May 24, 2016, with authorization to remain in the U.S. until November 23, 2016. At that time, their trip's purpose was twofold: for business and vacation. At all times material hereto, they intended to return to Turkey prior to the expiration of their B-1/B-2 visitor visas.

On May 24, 2016, shortly after the plaintiffs reached the U. S., the Turkish police raided their family home. On the same day, seven of Mr. Kavafoglu's colleagues from Mersin Yildirimhan Anadolu High School were arrested for purportedly having ties to Hizmet-affiliated institutions. They, like Mr. Kavafoglu, had current or past affiliations with the Hizmet Movement.

Due to his affiliation, Mr. Kavafoglu feared that he, too, would be arrested by the Turkish police upon his return. Therefore, on July 1, 2016, he filed a Form I-589 Application for Asylum and for Withholding of Removal with the United States Citizenship and Immigration Services

---

[3] The B1/B2 visitor visa may be granted to non-immigrants visiting the U.S. for business and/or tourism purposes.

Houston Field Office ("USCIS"), indicating that he and his family were present in the U.S. and should be included in the asylum application. On July 5, 2016, after the USCIS received the plaintiffs' asylum application, it acknowledged receipt pursuant to a notice which stated, in relevant part, as follows: "Your complete Form I-589 asylum application was received and is pending as of 07/01/16. You may remain in the U.S. until your asylum application is decided. If you wish to leave while your application is pending, you must obtain advance parole from USCIS." (Dkt. No. 15, Ex. C.). At no time thereafter did the plaintiffs submit an application to extend their lawful non-immigrant visitor status. As a result, their B-1/B-2 visitor visas expired on October 22 and November 23, 2016, respectively.

Sometime between October 4, 2016, and November 7, 2016, while the family awaited an asylum interview, Mrs. Kavafoglu registered herself and her family for the Diversity Immigrant Visa Program for the 2018 fiscal year. On May 2, 2017, Mrs. Kavafoglu was notified that she had been randomly selected to receive a visa through the Diversity Immigrant Visa Program and was assigned regional lottery rank number 23603. As a consequence, on August 10, 2018, the family submitted an adjustment of status application. On September 18, 2018, the family appeared at the USCIS Houston Field Office for an adjustment of status interview. On September 24, 2018, USCIS denied their adjustment of status application. Their subsequent request for review and reconsideration was also denied. This suit followed on September 29, 2018.

## II.

The plaintiffs assert that the USCIS "erroneously" denied their "adjustment of status application in light of 8 U.S.C. §1255(c)(2), 8 C.F.R. § 245.1(d)(2)(ii), the *Matter of L-K*, 23 I&N, Dec. 677, 682 (BIA 2004) and *Sayin v. United States*, No. 1:18-CV-643-LY, 2018 WL

4624827, *1(W.D. Tex. Sept. 26, 2018)." (Dkt. No. 15 at 6.). They maintain that the Immigration and Nationality Act ("INA") § 245(a); 8 U.S.C. § 1255(a) establishes grounds for the USCIS to grant an adjustment of status application. They further contend, citing INA § 245.1(c)(2); § 1255(c)(2), that the USCIS abused its discretion when it denied the plaintiffs' application.

Section 245 of the INA sets forth the prerequisites necessary for an applicant to adjust his or her immigration status. *See* 8 U.S.C. §1255. Under Section 1255(a) an adjustment of status of a non-immigrant to a LPR may be granted when an alien, who has been admitted to the United States, is eligible to receive an immigrant visa, is admissible for LPR, and an immigrant visa is immediately available. 8 U.S.C. § 1255(a). Section 1255(c) sets out two bases upon which an application for LPR status is barred: (a) when the applicant is in unlawful immigration status at the time of filing; or (b) when the applicant has failed to maintain continuously a lawful status since entry into the United States. *Id.* at § 1255(c)(2).

Since the plaintiffs failed to maintain their B-1/B-2 visitor visas during the processing of their July 2016 asylum application, the defendants assert that the plaintiffs were not in a "lawful" immigration status as required by § 1255(c)(2) and, therefore, are ineligible for an adjustment in status based on either basis set forth above.

The plaintiffs do not dispute that their B-1/B-2 visitor visas expired. Rather, they assert that their expirations were not their fault. While lawfully present and enjoying lawful status in the U. S., events occurred in Turkey that made a return by the expiration of their visas dangerous and life threatening, forcing them to file an asylum application that permitted them to remain in the U. S beyond the expiration of their visas, during the pendency of their asylum application. Because of their open asylum applications, the plaintiffs argue that "through no fault of their

own", or "for technical reasons" they did not maintain continuously their "lawful" non-immigrant visitor status. *See* 8 C.F.R. § 245.1(c)(2), *see also* 8 U.S.C. § 1255(c)(2).

With respect to this argument, the plaintiffs assert that they relied on the USCIS's notice issued upon the filing of their asylum application assuring them that they could "remain in the U. S. until [their] asylum application [was] decided." (Dkt. No. 15, Ex. C.). They assert that their asylum application is or should be treated as a request to maintain their non-immigrant visitor status, particularly since to renew their non-immigrant visitor visas would require them to "misrepresent" the basis for their requested change of immigration status.

### III.

In order for the plaintiffs to prevail on their claim, they must establish that the decision of the USCIS was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Sierra Club v. Peterson*, 185 F.3d 349, 368 (5th Cir. 1999), *on reh'g en banc*, 228 F.3d 559 (5th Cir. 2000) ("[D]*e novo* review of agency adjudications has virtually ceased to exist. In its stead, the 'arbitrary and capricious' standard of review of 5 U.S.C. § 706(2)(A) is now applied to review of agency determinations in the adjudicatory setting."). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Id.* (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). This Court is of the opinion that the USCIS's decision with regard to the matter *sub judice* was not arbitrary, capricious, an abuse of discretion or violative of the law. The Court's rationale for its conclusion is set forth below.

First, the plaintiffs did not have "lawful" immigration status on August 10, 2018--the day that they submitted their application for adjustment of status. *See* 8 C.F.R. § 245.1(d)(1). It is undisputed that the plaintiffs' last "lawful" immigration status was that of a "non-immigrant visitor" from April 23, 2016, through October 22, 2016.[4] Notwithstanding the aforementioned, the plaintiffs failed to request or obtain any new, lawful status or maintain their pre-existing B-1/B-2 visitor visas prior to their respective expiration dates. Although the record reflects that an asylum application was filed on July 1, 2016, which encompassed the entire family, the plaintiffs mere filing of that application, without more, did not create or establish any new, "lawful" status on their behalf. *See Dhuka v. Holder*, 716 F.3d 149, 156 (5th Cir. 2013).

The Seventh Circuit has also addressed this circumstance. In *Chandhry v. Holder*, the Seventh Circuit explained that "unlawful presence" and "unlawful status" are not synonymous concepts. *See* 705 F.3d 289, 292 (7th Cir. 2013). Therefore, case law, as well as the statute and regulation, make it clear that the plaintiffs were ineligible to file an application for adjustment of status on August 10, 2018, because they were not in a "lawful" immigration status at the time as defined by § 1255(c)(2). Instead, pursuant to an exercise of discretion by an USCIS official, they were granted permission to remain in the U.S. during the pendency of their asylum application. The USCIS's authorization in this regard does not equate to a right protected by law during the pendency of their asylum application sufficient to confer "lawful" immigration status. *See Dhuka*, 716 F.3d at 156.

The plaintiffs, nonetheless, maintain that to continuously pursue their lawful non-immigrant status as visitors would require them to make misrepresentations or false statements in their application. To this end, they contend that their basis for seeking to remain in the U.S.

---

[4] The plaintiffs' oldest daughter, A-K- was admitted to the U. S. as a non-immigrant visitor on May 24, 2016. Her visa expired on November 23, 2016.

arose because of turmoil in Turkey that transpired subsequent to their entry into the U.S.—a condition that did not exist at the time they received their B-1/B-2 visitor visas. Relying on the decision in *Sayin v. United States*, No. 1:18-CV-643-LV, 2018 WL 4624827 (W.D. Tex. Sept. 26, 2018), the plaintiffs insinuate that they have been forced into a "no fault" position or one that is a "technical violation" based on inaction by the USCIS, or due to a quirk in the law. This Court determines that the district court's decision in *Sayin* is not controlling here. It is clear that a technical violation occurs when the USCIS fails to timely act on a request to maintain or extend an existing status. *See* 8 C.F.R. § 245.1(d)(2). That is not the case here.

Indeed, the plaintiffs did not seek to maintain a "lawful" status during the pendency of their asylum application. Instead, they sought to utilize their status as asylum seekers to bridge the divide between their expired visitor status and that of a LPR. Hence, while the plaintiffs are eligible to remain in the U. S. to pursue their asylum applications at the discretion of the USCIS, they have not maintained any "lawful" immigration status.

**IV.**

Because the plaintiffs have failed to establish that the USCIS's decision was arbitrary, capricious, an abuse of discretion or contrary to law, this Court's Order granting the plaintiff's a temporary restraining order is **DISSOLVED**. The plaintiffs' requested relief is **DENIED** and their suit is hereby **DISMISSED**.

It is so **ORDERED**.

SIGNED on this 11th day of January, 2019.

_____
Kenneth M. Hoyt
United States District Judge